## Commonwealth *v.* Daily, Appellant (No. 2).

*Criminal law — Murder — Charge—Mistake—Harmless error— Reasonable doubt.*

1. Where a trial judge in a murder case has given instructions on a phase of the law relating to reasonable doubt at all times consistent and correct, a conviction will not be reversed because he made a mistake in explaining a question that might have arisen out of the Commonwealth's evidence, if it appears that such misstatement was not intended to, and in point of fact did not, instruct the jurors concerning the law or the burden of proof, or the consequences of the jury's findings of facts.

2. In such case there is no room for the application of the rule that where an erroneous instruction consists of a palpable mis-

statement of the law, it is not cured by a conflicting one which correctly states the law, unless the erroneous instruction is expressly withdrawn from the jury.

3. Where the evidence against defendant is so strong that it leaves no doubt, reasonable or otherwise, as to the justice of his conviction, a slip of the tongue should not cause a reversal, unless the reviewing court feels, not simply that the mistake in question possibly influenced the jury against defendant, but that it is strongly probable the verdict rendered reflects such adverse influence.

*Criminal law — Murder—Appeal—Record—Certification of record—Duty of court below—New trial—Abuse of discretion.*

4. When one convicted of a capital offense brings his case to a higher court, assigning as error an abuse of discretion by the original tribunal in refusing to grant a new trial, anything in the nature of evidence which the court below could have reasonably considered on an appeal to its discretion, is properly part of the record for purposes of review in the appellate court, and should be so certified when requested by the prisoner.

5. There is no reason for granting a new trial in a murder case, where, on consideration of a new story offered by the prisoner in support of an application for a new trial, the trial judge who saw and heard all the witnesses, including the prisoner himself, feels that, in view of the undenied details of the Commonwealth's case, and of the physical facts attending the homicide, the prisoner, even in the second defense tendered, ought, in the proper administration of the law, to be convicted of murder of the first degree.

6. Where a prisoner convicted of murder, alleges on an application for a new trial, that he was persuaded by his counsel to offer a false defense, and the accused's counsel makes no reply, such allegation will not be considered on appeal as a ground for reversal, as counsel may have considered it his professional duty not to contradict a client pleading for his life.

Argued February 25, 1924.   Appeal, No. 34, Oct. T., 1924, by defendant, from judgment of O. & T. Allegheny Co., Sept. T., 1922, No. 57, on verdict of guilty of murder of the first degree, in case of Commonwealth v. John A. Daily.   Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before MACFARLANE, J.
The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were various instructions and refusal of new trial, quoting record.

*James H. Gray,* with him *Jos. F. Weis,* for appellant.* —Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or a contradictory one which correctly states the law on the point involved, unless the erroneous instruction is expressly withdrawn from the jury: Com. v. Ross, 266 Pa. 580; Com. v. Divomte, 262 Pa. 504; Com. v. Greene, 227 Pa. 86; Com. v. Sayars, 21 Pa. Superior Ct. 75; Com. v. Gerade, 145 Pa. 289; Goersen v. Com., 99 Pa. 388; Com. v. Silcox, 161 Pa. 484.

*Harry A. Estep,* Assistant District Attorney, with him *Samuel H. Gardner,* District Attorney, for appellee, cited: Com. v. Ross, 266 Pa. 580; Com. v. Divomte, 262 Pa. 504; Com. v. Colandro, 231 Pa. 343; Com. v. De Felippis, 245 Pa. 612; Com. v. Delfino, 259 Pa. 272.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 17, 1924:

John A. Daily, appeals from a sentence to death for the murder of his wife, Catherine Daily, whom he killed on July 16, 1922, at about nine o'clock in the evening.

Defendant and his wife occupied a room on the second floor of a lodging house in the City of Pittsburgh; they had been together in their living quarters for about three hours on the evening of the tragedy when others in the building heard them quarreling; this was followed by three pistol shots, apparently behind the closed door of the Daily room, and then two more shots, which sounded as though they had been fired in the hallway just outside the door; immediately after the last discharge, Mrs. Daily was seen rushing down the stairway, and her hus-

*Neither of the attorneys named as for appellant appeared for defendant at the trial.

band, with a revolver leveled toward the stairs, emerged from the doorway, pausing in his pursuit to cast five empty cartridges from the weapon before throwing it away. The deceased was wounded in five places, two of the bullets passing through her body and three of them lodging in it. When arrested, the prisoner made a sworn statement to the effect that a strange man had come into his room, knocked him down, shot his wife, and run out of the house, adding that he had taken the revolver which the assailant abandoned before fleeing. Accused told this story at the trial, but the jury disbelieved it and convicted him of murder of the first degree. When called for sentence, Daily stated the defense he had given was a false one, offered by counsel against his protest, that, in point of fact, he killed his wife in the course of a scuffle for possession of the revolver, which had gone off accidentally, or the trigger of which was pulled by him during a period of irresponsibility because of anger and excitement; and he asked for a retrial so that he might stand on this new defense.

Appellant filed ten assignments of error, only two of which need be considered at large; the others, asserting that the charge was inadequate on matters of law and partial to the Commonwealth on matters of fact, are so lacking in merit they require no discussion.

The first of the assignments for consideration, being the third in number, calls attention to a passage from the charge as follows: "Now, if that were all you had in the case, you would have a comparatively simple question to solve as to whether you believe this testimony and are satisfied, beyond a reasonable doubt, that Daily *did not kill* his wife." It is complained that this constitutes a misinstruction on the law which did material harm to defendant.

In an opinion refusing to disturb the verdict, the trial judge states his belief that he said "did kill" instead of "did not kill," and suggests rather convincing reasons to show the likelihood that the inclusion of the "not"

was an error of the stenographer; nevertheless he certified the record as it stood, preferring "to give the defendant the benefit of any possible doubt." Since the court below was not willing to alter the record, this court must accept it as certified, and on that basis we shall proceed to review the matter brought to our attention by the third assignment.

Early in the charge the jury were told that the burden was on the Commonwealth to show defendant killed his wife, that the fact of the killing must be proved beyond reasonable doubt, and if the State failed so to establish that fact, the prisoner would have to be acquitted. The trial judge next outlined the proofs against the accused, ending his remarks in reference to this evidence with the words now complained of; immediately following these objectionable words, he proceeded to tell the jurors that, in passing on the "Commonwealth's testimony," they must consider also the other evidence in the case which made for defendant, and that the "main question," on the entire body of proof, was whether the jury had "a reasonable doubt that he [defendant] killed her [the deceased]." Then after outlining the testimony produced by defendant, the court again stated: "As I have already said to you, perhaps to the extent of wearying you, if you have a reasonable doubt that Daily killed his wife, then you should render a verdict of not guilty; if you have not, if you are satisfied beyond a reasonable doubt that he did kill her, then you must determine of what he is guilty." The language just quoted marks a stage in the trial judge's instructions where he entered on the law, whereas the excerpt quoted in the assignment under consideration contains words which were spoken, as above shown, when the court was neither dealing with the law nor instructing on the consequences of the jury's findings of fact.

In those portions of the charge which purport to cover the legal aspects of the case, the instructions on the point now in hand are at all times consistent and correct.

When the trial judge made the mistake complained of he was not discussing the law, he was endeavoring to explain that a certain question might appear to arise out of the Commonwealth's evidence, and, in the course of his explanation, by using the words "did not" instead of "did" he misstated the question; but this misstatement was not intended to, and in point of fact did not, instruct the jurors concerning the burden of proof or any other matter of law. When the phrase in controversy, "did not kill," is examined in connection with its modifying and amplifying context, as it should be (see Com. v. Bryson, 276 Pa. 566, 571), it appears that what the judge really did was to direct the jurors to pay no heed to the question formulated by him in which those words were used. "If that were all you had in the case," he said, "you would have [the] comparatively simple question," which he proceeded to incorrectly state. Then he went on to show there was more in the case, and, for this reason, the question phrased by him was not the one to be heeded, saying, finally, as hereinbefore quoted, "If you have a reasonable doubt that Daily killed his wife, then you should render a verdict of not guilty."

Under the circumstances thus presented, the rule announced in some of our cases, and relied on by appellant, that, "Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting......one which correctly states the law on the point involved, unless the erroneous instruction is expressly withdrawn from the jury," has no application. This rule has reference to instructions on the law, strictly speaking, and has no controlling force in a case like the present where, as explained above, the misstatement occurred when the judge was dealing with the subject in hand as a matter of fact rather than as a point of law, and where he warned the jurors they were not to accept, as the issue involved, the question at that time stated (or misstated) by him. Moreover, in a case like the one before us, where the evidence against defendant is so

strong that it leaves no doubt, reasonable or otherwise, as to the justice of his conviction, a slip of the tongue, such as the stenographer's notes indicate the trial judge may have here committed, should not cause a reversal, unless the reviewing court feels, not simply that the mistake in question possibly influenced the jury against defendant, but that it is strongly probable the verdict rendered reflects such adverse influence. In the present instance, any such supposition is inconceivable; in fact, the alleged error made so little impression at the trial that counsel failed to call attention to it when especially invited by the court to indicate mistakes on its part. We do not regard the language covered by this assignment as, under the circumstances, presenting reversible error.

The next complaint for discussion, that of abuse of discretion by the court below in refusing to grant a new trial, involves matters aliunde the trial itself and requires consideration of what occurred when the prisoner was called for sentence. The trial judge declined to certify the stenographer's notes of alleged facts stated by or on behalf of the prisoner just prior to sentence, when he was making an effort to avoid final judgment and to obtain an order for a new trial; the court also refused to certify certain papers then referred to by defendant, which he tendered to corroborate his allegations concerning what he asserted to have been a false defense, put in at trial against his protest. That these offers and the court's rulings in reference thereto might appear for purposes of review, defendant asked for and obtained a writ in the nature of a certiorari sur diminution of record (Com. v. Daily (No. 1), 280 Pa. 57), thus the stenographer's notes, accompanied by copies of the papers referred to by the prisoner, came to this court, with restricted certificates by the trial judge and a statement that, in his opinion, they did not properly constitute parts of the record. As to this, when one convicted of a capital offense brings his case to a higher court, assigning as error an abuse of discretion by the original tribu-

nal in refusing to grant a new trial, anything in the nature of evidence which the court below could reasonably have considered on an appeal to its discretion, is properly part of the record for purposes of review in this court, and should be so certified when requested by the prisoner; although, of course, such evidence would have to be most convincing to cause us to disturb an order refusing a new trial. We do not return the transcripts here involved, or any parts thereof, to the court below, for more formal certification than has been given to them, because, as will presently appear, after having read and considered these papers with the utmost care, we are unconvinced that any of the matters relied on can avail the prisoner.

It is not a novel occurrence for one convicted of crime, when called for sentence, to attempt to discredit the defense previously offered, or to tell the court that he lied at trial and if given a second chance will offer a truthful and better defense. This occurred in the recent case of Commonwealth v. Meleskie, 278 Pa. 383, 385-6, as stated in the opinion there filed; but a conviction of murder of the first degree was sustained. There is no reason for granting a retrial, and the law does not require it, where, as here, on consideration of the new story offered by defendant, the judge who saw and heard all the witnesses, including defendant himself, feels that, in view of the undenied details of the Commonwealth's case, as established at the trial, and of the physical facts attending the homicide, the prisoner, even on the second defense tendered, ought, in the proper administration of the law, to be convicted of murder of the first degree; and where the appellate court, after reading the entire record, concurs in that opinion, as we do in this case, it cannot hold the court below erred in refusing a new trial.

Defendant now admits he did the shooting; the testimony at trial, not since denied, shows he poured five separate shots into the body of his victim, and, even after that, started to pursue her with the revolver in his hand.

Considering the nature of the wounds inflicted and the weapon used, the facts just stated warrant the verdict rendered, which we see no reason to disturb.

The fact that counsel for defendant stood silent while the prisoner accused him of having offered a false defense, is of little significance on this review, for, as suggested at argument, he may have conceived it as his professional duty not to contradict a client pleading for his life; or, again, counsel may have reasoned that the accusations made against him by the prisoner called for no denial, since the defense at trial coincided with the story told by the latter to the police when first put under arrest, and before he, the attorney, was connected with the case.

The assignments of error are overruled, the judgment is affirmed, and the record is remitted for the purpose of execution.