## Commonwealth *v.* Meyers, Appellant.

*Criminal law — Murder — Trial — Continuance — Discretion of court—Appeals.*

1. A defendant in a murder trial has no natural or inalienable right to a continuance.

2. An application for a continuance is addressed to the sound discretion of the court, and, unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed on appeal.

3. Generally, where a continuance is asked for on the ground of the withdrawal of defendant's counsel and the engagement of another, the question is the sufficiency of the time which the defend-

ant himself has been allowed, and not whether the time between the date an attorney is engaged by the accused and the date set for trial, is sufficient.

4. The refusal of a continuance is not ground for reversal of a verdict of murder, where it appears that the trial judge in the exercise of his discretion considered the prisoner's attorney had an adequate opportunity to consult with his client, marshal the evidence and brief the law applicable to the case.

*Criminal law—Murder—Remarks of judge in presence of jurymen—Appeal—Harmless error.*

5. Alleged objectionable remarks of a trial judge in a murder case are no grounds for reversing a verdict of murder, where it appears that the remarks were made in the presence of jurymen in the court room, two days before the trial began, and before a jury was impanelled, and that the remarks had not affected the jurymen called, and had done the prisoner no harm.

*Criminal law—Murder—Remarks of district attorney.*

6. The district attorney in his official capacity exercises in a measure a judicial function. He should be cautious in expressing to the jury his opinion of the evidence, but it is also incumbent upon him to see that the Commonwealth's case is fully and fairly presented.

7. To justify a reversal, the language of the prosecuting officer must have been such that its unavoidable effect was to prejudice the jury by forming in their minds a fixed bias and hostility toward the defendant so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that might be present in the case, and thus make them unable to render a true verdict.

*Criminal law—Murder—Charge—Appeals.*

8. Detached portions of the charge in a murder trial are not ground for reversal, where such remarks, taken in connection with the context, could have done the prisoner no harm.

*Statutes—Repeals—Intermediate acts—Constitutional law—Revival and amendment of acts—Party aggrieved—Criminal law—Murder—Sentence—Hanging and electrocution—Death or life imprisonment—Acts of March 30, 1860, P. L. 382; June 19, 1913, P. L. 528; May 14, 1925, P. L. 759.*

9. Where a statute merely reënacts the provisions of an earlier one, it is to be read as part of the earlier statute, and not of the reënacting one, if it is in conflict with another passed after the first but before the last act, and therefore it does not repeal by implication an intermediate one.

10. Repeals by implication are not favored, and, before it is so held, the repugnance between the two acts must be total.

11. Section 75 of the Act of March 31, 1860, P. L. 382, providing that persons convicted of murder of the first degree shall suffer death by hanging, is not repealed by the Act of June 19, 1913, P. L. 528, except in so far as the later act changes the manner of death from hanging to electrocution.

12. The Act of May 14, 1925, P. L. 759, giving the jury the power to determine whether the penalty shall be death or life imprisonment, does not, in reënacting section 75 of the Act of March 31, 1860, P. L. 382, violate article III, section 6, of the Constitution relating to the revival and amendment of acts previously passed.

13. Section 75 of the Act of 1860, was not repealed in toto, but only in part, and the remainder substantially reënacted in the Act of 1913, and the amending Act of 1925 did not revive or amend a dead act contrary to the constitutional inhibition.

14. The Act of 1925 should be construed as part of the original Act of 1860, modified or amended by the intermediate act of 1913.

15. Even if the Act of 1925 were unconstitutional, the Act of 1913 is effective to carry the punishment as it does the method of inflicting it, so that a person convicted of murder of the first degree is in no wise affected by the constitutionality of the Act of 1925.

16. Only one injured by an unconstitutional act, can take advantage of the defect.

Argued May 23, 1927.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 246, Jan. T., 1927, by defendant, from judgment of O. & T. Phila. Co., Jan. T., 1927, No. 976, on verdict of guilty of murder of the first degree, in case of Commonwealth v. William Meyers. Affirmed.

Indictment for murder. Before McDEVITT, J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the first degree with penalty of death, on which sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*D. Arthur Magaziner,* with him *Edward J. Swotes,* for appellant.—It was error to refuse a continuance: Com. v. Polochinus, 229 Pa. 311; Com. v. Jester, 256 Pa. 441; Epstein v. Ins. Co., 245 Pa. 132.

Remarks of the judge constitute error: Com. v. Jones, 280 Pa. 368; Com. v. Stallone, 281 Pa. 41; Griffin v. United States, 205 Fed. 437.

The court erred in drawing jurors from a panel which heard such remarks.

The remarks of the district attorney did material harm to defendant: Com. v. Nicely, 130 Pa. 261; Com. v. Bubnis, 197 Pa. 542; Com. v. Striepeke, 32 Pa. Superior Ct. 82; Com. v. Ronello, 251 Pa. 329; Schroth v. Transit Co., 280 Pa. 36; Dannals v. Twp., 255 Pa. 156; Com. v. Shoemaker, 240 Pa. 255; Com. v. Silcox, 161 Pa. 484; Com. v. Goldberg, 4 Pa. Superior Ct. 142; Com. v. Croson, 243 Pa. 19; Rhodes v. Com., 48 Pa. 396; Com. v. Fellows, 212 Pa. 297; Com. v. Chapler, 228 Pa. 630; Com. v. Ferko, 269 Pa. 39.

*Charles F. Kelley,* Assistant District Attorney, with him *Charles Edwin Fox,* District Attorney, for appellee.—The refusal of a continuance was proper: Com. v. Scouton, 20 Pa. Superior Ct. 503; Com. v. Dietrich, 7 Pa. Superior Ct. 515; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Delero, 218 Pa. 487; Com. v. Pennington, 249 Pa. 536; Com. v. Zec, 262 Pa. 251; Com. v. Blakeley, 274 Pa. 100.

Remarks of the trial judge did not constitute error: Com. v. Donnelly, 86 Pa. Superior Ct. 427.

The Act of May 14, 1925, is constitutional: York Gazette Co. v. Co., 25 Pa. Superior Ct. 517; Brown v. Co. Commissioners, 21 Pa. 37; Homer v. Com., 106 Pa. 221; Sifred v. Com., 104 Pa. 179; Marquett v. Co., 3 Pa. Superior Ct. 36; Wood Co. v. I. & C. Co., 93 U. S.

619; Arthur v. Homer, 96 U. S. 137; Cope v. Cope, 137 U. S. 682; U. S. v. Matthews, 173 U. S. 381.

OPINION BY MR. JUSTICE KEPHART, June 25, 1927:

When the case of appellant, William J. Meyers, charged with the murder of Policeman William F. Slook on January 13, 1927, was called for trial on Monday, January 31st, a member of the bar who had, until then, represented him, appearing at the coroner's hearing on January 21st, stated to the court below that he no longer represented Meyers and was permitted to withdraw. Defendant requested leave to secure other counsel and was given time for that purpose by the court below. Later in the day, new counsel appeared for the defense and requested a continuance for at least a week, or until the following Monday. When this application was refused, counsel then asked that the case be set over until the following Thursday. The court fixed Wednesday instead as the day of trial; the taking of testimony did not commence until Thursday. Exceptions were noted to the refusal of the court to grant a continuance; to certain remarks of the trial judge occurring in the colloquy that had ensued between the attorneys, the defendant and the court; to the refusal to discharge from duty in this case the entire panel, who were in the room when the remarks were made; and to the refusal to sustain a challenge for cause of a juror who heard the remarks but "paid no attention" to them.

A defendant has no natural or inalienable right to a continuance. An application for it is addressed to the sound discretion of the court, and, unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed by an appellate tribunal: Com. v. Blakely, 274 Pa. 100, 104; Com. v. Zec, 262 Pa. 251, 255; Com. v. Scouton, 20 Pa. Superior Ct. 503, 517. See also 16 C. J. 451, 452. Three weeks had elapsed from the day defendant was arrested to that originally fixed for trial. In the absence of any unusual circumstance, this

would be ample time to prepare his defense here, as there were but few incidents connected with it. Defendant asked for a week's delay; he knew the Saturday before that he must engage other counsel. Had he acted as promptly as he did Monday, the new counsel would have had what he then considered ample time. Generally, the question in such cases is the time which the defendant himself has been allowed, and not whether the time between the date an attorney is engaged by the accused and the date set for trial is sufficient. Otherwise all that a defendant would have to do in order to secure unending delay would be to change counsel on the eve of the trial.

Even if we assume that the withdrawal of appellant's first attorney was a matter beyond his control, we cannot say that the court below abused its discretion in ordering the trial to proceed. There was no question of the absence of material witnesses, whose presence could not be secured in the allotted time; nor was the evidence of such a complicated nature that it required further time for consideration and analysis. The only question in the case now before us is whether the prisoner's attorney had an adequate opportunity to consult with his client, marshal the evidence and brief the law applicable to the case. The learned trial judge considered it sufficient, and, under the circumstances, no error was committed.

The remarks of the court during the hearing of the motion for continuance were as follows: "Change of counsel at the eleventh hour is not going to be used as an excuse by you for an indefinite continuance of this case." "At the last minute you change counsel for no apparent reason, giving up as good counsel as you can employ at the Philadelphia Bar, and the purpose is perfectly apparent." Still later the court said: "The wheels of justice are not going to be impeded by technical reasons, brought up for a specific purpose which is apparent to everybody." These remarks, it is stated,

were made in the presence of the panel of jurors summoned for duty in this particular courtroom, and who would try the accused. Defendant urges that, in view of the remarks, no juror should have been selected from that panel.

It is to be noted that the remarks complained of were made before the trial actually began. It was simply one of those many incidents which occur during the opening of court to which jurors, as a rule, give little heed. Had they been made after the jury had been impanelled to try the case, there would be a great deal of force in appellant's contention. See Com. v. Stallone, 281 Pa. 41, 43. While the patience of the learned trial judge was undoubtedly taxed, and rightly so, the spirit in which the remarks were made could not have been misunderstood by anyone who paid attention to them. But the whole episode took place two days before the case was finally called for trial. Of the twelve jurors finally selected, only five were drawn from the panel in question, and there were sufficient peremptory challenges left to have stricken these. The first juror accepted was asked whether he had heard the remarks and stated that he was present but had not heard what the judge said. The others either were not asked whether they had heard the remarks, or answered that they had heard them but paid no attention, since they were not interested in the case. In view of these circumstances it does not appear to us that defendant was injured by the remarks complained of, and, for that reason, these assignments of error cannot be sustained.

Meyers, with his companion Hynes and two women, visited a cafe at Twelfth and Filbert Streets. They all left there together in an automobile. Defendant occupied the back seat with Mrs. Bell. In passing Sixteenth and Callowhill Streets, police officer Slook noticed the machine was being driven without lights. Another officer had noticed the same thing. Both warned the driver to turn on his lights. He did not

stop, or turn on the lights, but drove rapidly away. Officer Slook commandeered a passing cab, pursued the fleeing car, and, after firing several shots in the air, finally succeeded in stopping it at Seventeenth and Ridge Avenue. The driver, Hynes, got out of the car and officer Slook stepped up to him and was feeling through his pockets to discover weapons. The defendant, Meyers, stepped out of the machine from the rear seat, with gun in hand, approached Slook, and, without warning, started to fire at him, one of the shots taking effect in his face, the other apparently missing. After the second shot, Slook backed away from the defendant, turned and proceeded north on Seventeenth Street. Meyers followed, firing three or four shots; the last one was fired after taking deliberate aim while within ten or twelve feet of his victim. Slook fell to the ground and was later taken to the hospital, where he died. The defendant was arrested the following morning. The revolver used in shooting the policeman was found in the bed where Meyers was lying when arrested. After a recital of these facts by the assistant district attorney in opening to the jury as to what he proposed to prove, this comment was made: "If the circumstances are as narrated, they are so aggravated that the electric chair is too good [for the defendant]."

The district attorney, in his official capacity, exercises in a measure a judicial function. He should be cautious in expressing to the jury his opinion of the evidence, but it is also incumbent on him to see that the Commonwealth's case is fully and fairly presented. The statements of counsel which are based on facts he expects to prove, or on legitimate inferences deducible therefrom, do not transcend the bounds of a legitimate opening, and are not to be discountenanced by the court. The important question is whether the prosecuting officer's remarks are mere assertions intended to inflame the passions of the jury, or statements that are fair deductions from evidence expected to be presented. As-

sertion of opinion for the purpose of stimulating the jury to a careful and conscientious discharge of their duty in a particular case is always allowable. Where, under all the circumstances of the case, the verdict rendered is a just one, the language of the prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable, to render a true verdict. The remarks of the district attorney in this case were merely an opinion on the evidence as narrated. Where the result of the trial is, as in this case, a correct finding, it would require much stronger language than that complained of to cause us to declare a mistrial: Com. v. Daily, 280 Pa. 59, 64, 65; Com. v. Marshall, 287 Pa. 512, 513-14.

The defendant excepts to the charge of the court in many particulars,—in failing to sufficiently elucidate defendant's evidence as to intoxication, the use of such an expression as "compromise verdicts," and in not explaining the effect of the Act of May 14, 1925, P. L. 759, as to life imprisonment.

The trial judge called to the jury's attention such evidence as there was of intoxication, although not in detail. Sufficient reference was made to cause the jury to remember it and apply the law as defined by the court.

When the quoted expression is read in connection with the context of the charge, it is manifest the jury could appraise its value, and what it was intended to convey. Juries should always endeavor to reach verdicts without compromise.

The Act of 1925 permits the jury to fix life imprisonment as the punishment for murder of the first degree; the trial judge read the act, the jury thoroughly understood they could fix life imprisonment, and no further

explanation was necessary. Other criticisms of the charge are equally without merit.

The remaining question is the constitutionality of the Act of May 14, 1925, P. L. 759, permitting the jury to fix the penalty for first degree murder at life imprisonment or death. The act reads as follows: "Section 1. Be it enacted, etc., That section seventy-five of the act, approved the thirty-first day of March, 1860, P. L. 382, entitled 'An act to consolidate, revise and amend the penal laws of this Commonwealth,' is hereby amended to read as follows: Section 75. That every person convicted of the crime of murder of the first degree......shall be sentenced to suffer death......in the manner provided by law, or undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict." It is urged that in amending section 75 of the Act of 1860, the legislature amended a section that had been repealed by the Act of June 19, 1913, P. L. 528, contrary to article III, section 6, of the Constitution. This act reads in part, "That every person, his aiders, abettors and counsellors, hereafter convicted of the crime of murder of the first degree, shall be sentenced to suffer death in the manner herein provided, and not otherwise. Such punishment, in every case, must be inflicted by causing to pass through the body of the convict a current of electricity of intensity sufficient to cause death, and the application of such current must be continued until such convict is dead." Section 11 repeals all acts "inconsistent herewith" and section 12 makes this act a complete method for inflicting the death penalty. Section 75 of the Act of March 31, 1860, P. L. 402, which is said to have been repealed by the Act of 1913, and reënacted by the Act of 1925 reads as follows: "That every person convicted of the crime of murder of the first degree, his aiders, abettors and counsellors, shall be sentenced to suffer death by hanging by the neck,"

It is defendant's contention that section 75 of the Act of 1860 is entirely repealed by the inconsistent provisions of the Act of 1913, and that when the later Act of 1925 reënacted the provisions of section 75 of the Act of 1860, it violated article III, section 6, of the Constitution. Article III, section 6, reads: "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be reënacted and published at length."

Appellant urges that the Act of 1925 attempted to amend the Act of 1913 by reciting the provisions of section 75 of the Act of 1860 which had been repealed. Even if appellant's contention be correct, he would be no better off, as the Act of 1913 is effective to carry the punishment as it does the method of inflicting it, and, under a familiar principle of the law, only one injured by an unconstitutional act can take advantage of that defect. See Com. v. Haldeman, 288 Pa. 81, 83, and authorities there cited. But to settle the question for future practice we shall consider the constitutional point suggested.

It is contended by the district attorney that section 75 of the Act of 1860 was not repealed in toto, but only in part, and the remainder substantially reënacted in the Act of 1913, and the amending Act of 1925 did not revive or amend a dead act contrary to constitutional inhibition; and that it should be construed as part of the original Act of 1860, modified or amended by the intermediate Act of 1913. This is the effect of the legislation. Section 75 of the Act of 1860 fixed the punishment for murder of the first degree to be death. It also provided the method of executing that punishment, by hanging. The Act of 1913 did not change the punishment for murder of the first degree; it continued to be death, but the method was changed from hanging to electrocution. Section 12 of the Act of 1913 states that this act should be a complete and comprehensive *method of*

*inflicting the death penalty,* and we so construed it in Com. v. Tassone, 246 Pa. 543. In other words the death penalty can be inflicted only in one way, passing a current of electricity through the body of sufficient intensity to produce death, and until death is produced. The punishment for murder of the first degree under the Act of 1860 continued unchanged under the Act of 1913, until the Act of 1925, when the punishment was fixed at either death or life imprisonment as the jury may determine.

The reënacting statute of 1913 made no change in the substantive law, as to the punishment for murder of the first degree, as found in section 75 of the Act of 1860. The Act of 1913 must be construed as continuing the law in that respect as it existed before its passage. This must be so unless the legislative intent is manifest that the prior act should be repealed in its entirety by the later act, or, that there are such irreconcilable inconsistencies as to cause its repeal; neither of these circumstances is present in the two acts.

The Act of 1925, by amending the Act of 1860, does not repeal the Act of 1913, or modify it. The Act of 1925 may be read in harmony with the intermediate act. But the latest act must be read as part of the Act of 1860, modified and amended by the Act of 1913. "It is established that 'where a statute merely reënacts the provisions of an earlier one, it is to be read as part of the earlier statute, and not of the reënacting one, if it is in conflict with another passed after the first but before the last act; and therefore it does not repeal by implication an intermediate one' (Endlich on the Interpretation of Statutes, section 194); or, as expressed in 36 Cyc. 1084, 'Nor does a later law, which is merely a reënactment of a former, repeal an intermediate act which qualifies and limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first'; see also Lewis's Sutherland on Statutory Con-

struction, section 273, and Searight's Est., Stuart's App., 163 Pa. 210, 216-18": Toner's Est., 260 Pa. 49, 57. The principle is stated in Harvey v. City of Hazleton, 81 Pa. Superior Ct. 1, 5, 6; St. Louis v. Alexander, 23 Mo. 483.

On the question of the repeal of the entire statute by the language in section 11 above discussed, we may say that a general repealing clause does nothing more than state what would be the effect of the statute without such a clause. All inconsistent acts or parts of acts would be repealed by implication. But unless there is an actual inconsistency, the prior act is not repealed. "Repeals by implication are not favored, and, before it is so held, the repugnance between the two acts must be total. To ascertain this, we must determine the purpose of the act and the intent of the legislature. This intent is the controlling factor in determining all such questions, and, notwithstanding the fact that a subsequent statute may, strictly speaking, be opposed to a prior one, still, if the legislature intends otherwise, it will not be repealed: Com. v. Provident Trust Co., 287 Pa. 251, 257; Provident Life & Trust Co. v. Klemmer, 257 Pa. 91.

As thus construed, the Act of 1860, as amended by the Act of 1925, fixed the penalty for murder of the first degree at death or life imprisonment. The Act of 1913 did nothing more than provide that, in cases where death was fixed as the penalty, the method of executing the sentence should be electrocution.

We are required by act of assembly to examine the record and determine, from our independent judgment, whether the elements essential to murder of the first degree are present. This we have done and have found such elements present.

All the assignments of error are overruled, the judgment is affirmed, and the record is remitted for the purpose of execution.