Commonwealth *v.* Talarico, Appellant.

Argued January 7, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Malvin H. Reinheimer,* for appellant.

*Vincent A. Carroll,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MAXEY, February 6, 1935:

This is an appeal from the judgment and sentence of the Court of Oyer and Terminer of Philadelphia County upon a verdict of murder in the first degree with the penalty fixed at death.

On the evening of September 3, 1934, the appellant with four others went in a car to a point near the textile branch of the Industrial Trust Company in Philadelphia, for the purpose of robbing the manager of the Kent Theatre when he brought the day's receipts to the bank. The brother of appellant was left in charge of the car and the others proceeded to the scene of the intended holdup.

About 10 : 20 p. m. the manager, accompanied by Officer William C. Wilson, arrived at the bank. The officer descended from the automobile with the receptacle containing $637.15 and as he raised his arm to ring the bank's night bell, one of the robbers named Mika rushed at him with terrific speed and knocked him down. Mika then fired several shots into his body. The appellant did likewise. Ten bullets took effect and the officer within a few minutes succumbed to his wounds. The bandits picked up the cash box from the pavement, ran to the waiting car, and drove away.

Appellant was arrested on September 6th and on October 2d filed an affidavit alleging financial inability and asking that counsel be assigned him. On October 11th the counsel now of record received notice that he had been assigned to defend appellant and that the trial was fixed for October 17th. Trial, conviction, and sentence followed.

Counsel for appellant frankly states in his paper book that "there was no defense as to the crime or the degree thereof." The only matter offered in behalf of the defendant was in mitigation of the penalty. Certain testimony was presented showing that defendant suffered a head injury at one time, that he was backward in school, that he was subject to epileptic fits, and that he had a feeble-minded uncle and an epileptic sister. It was testified by a psychiatrist that defendant was a mental defective who gave a history of epilepsy and moral delinquency. All this testimony was properly submitted to the jury, but without avail to the defendant.

The assignment of error which makes chief claim for attention is the eighth. It is based on the following excerpt from the charge of the court: "Gentlemen of the jury, do not bring in a facetious verdict. Do not straddle justice. Do not compromise your verdict. You reach your own conclusion. Base your conclusion upon the facts you have heard from the witness stand, and absolutely nothing else." It was contended that this state-

ment was as erroneous and prejudicial to the defendant as was the statement of the trial judge in the case of Com. v. Brown, 309 Pa. 515, 164 A. 726, which with others was successfully assigned for error and which reads as follows: "But look upon his innocence or guilt according to the testimony you have heard from the witness stand, and absolutely nothing else."

These two excerpts are substantially similar and if the context, and the tenors of the respective charges were substantially similar, a reversal of the judgment would be called for. In the Brown Case the argument of defendant's counsel was characterized by the trial judge as "an harangue" and the jury was instructed to disregard it in arriving at a verdict. In the instant case the trial judge said early in his charge: "Every defendant is entitled to be represented, and every counsel owes it to his client to properly present his case and to make the best possible argument to the jury. You may adopt the argument of the district attorney in toto, or you may reject it; and you may adopt the argument of defendant's counsel in toto, or you may reject it and reach your own conclusion." The statement of the trial judge which is complained of in the instant case is, when read in connection with other parts of the charge, not error and the assignment based upon it is overruled.

The appellant also complains (first assignment) that he was not given sufficient time for the preparation of a defense. In view of the fact that the crime was committed on September 3d, and the defendant was apprehended three days later and the case not tried until October 17th, there is no merit in this contention. It is true that counsel was not assigned to defend appellant until October 10th but this circumstance offers no support to this assignment. In Com. v. Meyers, 290 Pa. 573, 578, 139 A. 374, this court said: "Generally, the question in such cases is the time which the defendant himself has been allowed, and not whether the time between the date an attorney is engaged by the accused and the date set for

trial is sufficient. Otherwise all that a defendant would have to do in order to secure unending delay would be to change counsel on the eve of the trial." Even now, long after the commission of this crime, counsel for appellant virtually admits that there is no defense to the crime charged, and possibly the most that could be done for the appellant was to offer evidence in mitigation of the penalty. Such evidence was offered and there is no ground for legal complaint that the jury did not find it sufficiently persuasive to induce them to impose a penalty short of the penalty of death.

The fifth assignment of error is based on the following testimony of Detective Cronin: "We found out that he had been running with Willie Talarico and Diddlebock. We went to the gallery and got those three pictures of the gang." Counsel for defendant moved for the withdrawal of a juror on the ground that the jury would draw from the statement of the detective the inference that he was referring to the *rogue's* gallery. This assignment is without merit, for the word "gallery" does not necessarily mean rogue's gallery, and in view of the atrocious character of the crime admittedly committed by the prisoner, we think it could have made no difference to the jury in determining the appropriate penalty whether the officer obtained his picture in the rogue's gallery or in some other kind of gallery. Nothing was said in the charge of the court as to the defendant's picture being in any rogue's gallery, and it does not appear that any such reference was made by the district attorney in his closing argument. There was no abuse of discretion on the part of the court in refusing to withdraw a juror. This assignment is overruled.

Complaint is made in the third assignment of error that the Commonwealth was permitted to exhibit the blood-stained and bullet-riddled garments of the deceased and that this served to inflame the jury. Here (and we believe elsewhere) the Commonwealth has long been permitted in a homicide case to exhibit to the jury the cloth-

ing of deceased, when such clothing bears evidence of the violence of the alleged attack. In Udderzook v. The Com., 76 Pa. 340, Chief Justice AGNEW said: "It is customary in murder cases to permit the jury to take out for their examination the clothing worn by the deceased, exhibiting its condition, the rents made in it, the instrument of death, and all things proved and given in evidence bearing on the commission of the offense." See also Com. v. James, 294 Pa. 156, 143 A. 910, and Com. v. Dudick (No. 1), 87 Pa. Superior Ct. 25. We said in Com. v. Szachewicz, 303 Pa. 410, 154 A. 483, "The admission in evidence of clothing worn by the deceased was within the discretion of the trial judge." "Clothing worn by the deceased at the time he was killed is admissible in evidence before the jury": 8 R. C. L., page 180, section 173.

The complaint made in the sixth assignment of error is the trial judge's comments in the charge as follows: "You have a right to dismiss counsel's arguments to you that the defendant's mental development is such that he is not entirely responsible for all that he does. Gentlemen of the jury, did you notice in the selection of you twelve jurors that none of you was selected until counsel first conferred with his client? Is a lawyer of his attainments conferring with a man of an inferior mentality because he thinks him inferior? You have to consider those facts as you see them. His own expert said he was not insane and knew the difference between right and wrong. You have a right as laymen to consider his normality. It does not require medical testimony to pass upon the normality or abnormality of defendants. You have a right, as laymen, to pass upon the conduct of a man and to interpret the development of his mentality, and his reason, and his power to differentiate between right and wrong, from what he says and what he does. You saw him on the witness stand. You heard him answer questions." While we agree with appellant's counsel that this part of the charge was over-argumentative we do not adjudge it to be reversible error. The jurors had a right to observe the

defendant in the court room and his manner of consulting with his counsel and to give due weight to their observation. This assignment is overruled.

All of the assignments of error are overruled.

The judgment is affirmed and the record remitted for the purpose of execution.