## Knight v. Showers, Sr., et al.

Driscoll, Gregory & Coppolo, for plaintiff.

Robert F. Pontzer, for defendants.

TRAMBLEY, P. J., August 21, 1953.—This case arises as a result of an automobile accident which occurred at or near the foot of what is known as "brick hill" on U. S. Highway Route No. 219 about one mile south of Johnsonburg, Elk County, Pa.

From the evidence it appears that plaintiff's truck, driven by his employe and agent, was proceeding northward with a load of gravel for use on a State highway construction project north of the Borough of Johnsonburg. At the foot of the "brick hill" there is a concrete bridge over a small stream and immediately south of the bridge there is a curve to the right or west when proceeding south. Defendant's truck was proceeding southward down the "brick hill". It also was engaged in hauling gravel for the same construction project from the same point of origin. This truck was empty, returning for another load of gravel when the accident occurred and was driven by Samuel Showers, Jr., a

son of the owner and other defendant, Samuel Showers, Sr. The accident occurred a very short distance north of the bridge above referred to.

The testimony on behalf of plaintiff was that his truck was proceeding northward at a speed of about 35 miles per hour on his own side of the road, had just rounded the curve and crossed the bridge when it was struck by the truck of defendant. Plaintiff's further testimony was that defendant's truck was on the wrong side of the road and that he pulled off to his right as far as possible but could not avoid the collision. Plaintiff's witness testified that he first saw defendant's truck when it was 300 or 400 feet away on the wrong side of the road; that defendant's truck went so far to the left that one dual wheel was off the left side of the road and that when he came back on the road the collision occurred. Plaintiff's testimony further was that when the two trucks came together defendant's truck was on plaintiff's side of the road and that the right wheels of plaintiff's truck were off on the berm, and that there were patches of fog along the highway. Defendant produced witnesses, two of whom lived in the immediate vicinity of the accident and one of whom was the first to arrive at the scene after the accident. They testified that defendant's truck was on its own side of the highway as it went down the "brick hill" passing their houses and that they did not see it on the left side of the road at any time but admitted they did not watch the truck all the time. One of these witnesses also testified that there were marks on the highway made by defendant's truck and that they were on the right side of the highway "pulled into the left . . . to the center" and led up to the point where the trucks were after the accident. The other of these witnesses said she lived in the house nearest the bridge which is only about 60 feet from the scene of the accident, saw defendant's truck coming down the road

near her home and that he was so far to his right that he was hitting the dirt and she saw some dust flying. On cross-examination this witness admitted that she was facing north towards Johnsonburg in her kitchen window when she saw the dust flying.

There was testimony by a member of the Pennsylvania State Police that Samuel Showers, Jr., driver of defendant's truck made a verbal statement to him in which he admitted that he could have been over on the other side of the road.

At the end of plaintiff's testimony, defendant moved for a compulsory nonsuit for the reason that plaintiff had not proven any negligence against defendant and that to submit the case to the jury in its present state would be mere speculation. This motion was refused.

Plaintiff then moved the court to limit the evidence of defendants to the issues raised by the affidavit of defense only and not to permit the defense to introduce evidence to sustain the counterclaim for the reason that the counterclaim is not sufficient under the rules of procedure to sustain their claim and because the defense failed to introduce the counterclaim in accordance with the rules of procedure. While plaintiff did not state in his motion just how the rules of procedure were violated, later in his brief and argument he stated that the deficiency in the counterclaim was the failure of defendant to endorse a notice to plead and that this in fact rendered the counterclaim null and void.

A further incident of the trial was that after the jury had retired to deliberate upon its verdict there was delivered to the court in a sealed envelope by the tipstaff in charge of the jury a communication which read as follows:

"May it please the court:—May we bring in a verdict that both parties were negligent in the Knight-Showers case (signed) W. S. Williams, Foreman of the Jury."

The official court stenographer, by direction of the court, wrote, on the same paper, immediately below the words "Foreman of the Jury" the following: "If you find both parties negligent your verdict should be for the defendants." This note was not signed by the court.

The court placed the paper in an envelope, sealed it, and delivered it to the tipstaff for return to the jury. Neither of the parties nor their counsel were present, nor, at the time, informed of these communications between the court and the jury. After the jury returned from the jury room and had taken their seats in the court room, counsel for both parties entered the court-room and as the court was about to go on the bench he motioned counsel for both parties to go into the judge's chambers and the judge then told of the communications between the court and the jury. On being told, counsel for plaintiff said: "I guess that is correct" and counsel for defendants: "That is the law." Neither counsel for plaintiff nor counsel for defendants at that time objected to the manner in which the court had sent these instructions to the jury. The facts as to what had transpired after the jury retired were placed on the record by stipulation of counsel for both sides on April 22, 1952, and were made a part of the record in the case. Defendants at that time were allowed an exception to everything that occurred subsequent to the jury's originally going to the jury room to deliberate upon their verdict, particularly to that part of the record starting at the bottom of page 121 and running to the end of the record on page 124, which concerned the communications between the court and jury, returning a verdict for plaintiff, polling the jury, request that the record show a motion for a new trial because of the communication between the court and jury and the recording of the verdict.

On January 23, 1952, defendants filed a motion for a new trial for the following reasons:

1. The verdict was against the evidence.

2. The verdict was against the weight of the evidence.

3. The verdict was against the law.

4. The verdict was against the charge of the court.

5. The learned trial judge erred in giving either oral or written instructions to the jury after they had retired, in answer to a request from the jury for further instructions in the absence of the parties or their counsel, and without requesting the presence of either of the parties, or their counsel.

6. The learned trial judge erred in sending instructions to the jury by means of the tipstaff after receiving a request for further instructions from the jury, and without calling the jury back to the court room where these instructions could have been given in the presence of the parties and their respective counsel.

7. The learned trial judge erred in sending instructions to the jury after they had retired and while they were deliberating by means of using the tipstaff as an emissary.

8. The learned trial judge erred in giving further instructions to the jury by means of the tipstaff after receiving a written request for further instructions from the jury, in the absence of either of the parties or their counsel, and without calling the jury back into the courtroom where said instructions could have been given in the presence of the parties and their respective counsel.

Defendants reserved the right to file additional reasons as soon as complete notes were received from the official stenographer.

On March 31, 1952, defendants filed supplemental reasons for a new trial as follows:

1. The learned trial judge erred in limiting the evidence of defendants to the issues raised by the affidavit of defense, and in not permitting evidence to sustain defendant's counterclaim.

2. The learned trial judge erred in denying defendants' motion to amend their counterclaim so as to add a notice to plaintiff to plead to the counterclaim.

### Discussion

The first four reasons assigned are the general reasons assigned on motions for a new trial. Insofar as reasons numbers 1 and 2 are concerned our decisions hold that where the evidence is conflicting and there was sufficient competent evidence on which the jury could base its decision, that a new trial would not be granted: Heyman v. Hakauer, 302 Pa. 56, 63; McPeek v. Shafer, 120 Pa. Superior Ct. 425, 429. We are of the opinion that, although the evidence in this case was conflicting, there was sufficient competent evidence on which the jury could base its decision and these exceptions are, therefore, dismissed. In our opinion exceptions 3 and 4 have no merit and can be disposed of without discussion. These two exceptions are dismissed.

Exceptions 5, 6, 7 and 8 can be grouped for discussion as they all bear on the propriety of the additional instructions given by the court to the jury after it had retired to deliberate on the verdict.

The practice of the court giving additional instructions to the jury in the absence of the parties or their counsel is strongly condemned by our appellate courts but the general rule of law is that unless the court is convinced, not only that error was committed, but also that such error did in all probability harm defendants, it is not reversible error. Therefore, the mere fact that the judge had given additional instructions to the jury in the absence of the parties and their counsel is not, of itself, ground for granting a new trial: Com.

v. Dailey (No. 2), 280 Pa. 59, 65; Com. v. Marshall, 287 Pa. 512, 524; Com. v. Dilsworth, 289 Pa. 498, 508; Com. v. Meyers, 290 Pa. 573, 581; Com. v. Kelly, 292 Pa. 418, 421; Allegro v. Rural Valley Mutual Fire Insurance Company, 268 Pa. 333; Altsman v. Kelly, 336 Pa. 481; Com. v. Knable, 369 Pa. 171, 177; Cunningham v. Patton, 6 Pa. 355; Sommer v. Huber et al., 183 Pa. 162; Hunsicker v. Waidelich, 302 Pa. 224; Noreika, to use, v. Pennsylvania Indemnity Corporation, 135 Pa. Superior Ct. 474.

While some differences appear between the circumstances under which the additional instructions were given in this case and the circumstances present in the above cited cases and other cases cited in the briefs of the parties, we agree with what was said by the learned trial judge in the case of Commonwealth v. Kelly, 292 Pa. 418, 421, in refusing to set aside the verdict of the jury.

"The charge contains the same identical instruction as that which was given later to the jury after they had retired (and this is conceded by defendants). If there were any contradiction or uncertainty as to the instructions, there should, of course, be a new trial but (to hold it to be reversible error) for the judge to repeat to the jury, either by recalling them or in a note in answer to their inquiry, a part of the instruction already given them, even though the defendants and their counsel were not present, seems to us to be supertechnical and not in harmony with the tendency of our courts to have cases retried only where there has been material error made in the trial of the case."

In this case the instructions given were merely a repetition of the instructions which the court had already given the jury on three different occasions in its charge. These instructions were conceded by defendants to be correct. They were not objected to when given nor after the charge. Counsel for defendants

did not object to the manner in which the instructions were given when informed by the court that he had received and answered the communication from the jury. Later, on April 22, 1952, as above stated, after stipulation made, defendants objected to the manner in which the instructions were given, the court overruled the objection and an exception was allowed defendants.

In view of what we have said above in regard to the effect of giving instructions, as here given, the only possible concern which defendants could now have would be whether the foreman of the jury correctly read the additional instructions to the jurors. In the absence of evidence to the contrary the presumption is that he did.

It might be argued that the sequence of events, namely, the request for instructions as to a proper verdict if both parties were found guilty of negligence; the statement of the trial judge that "it looked very much as though they [the jury] were going to find for the defendants", and their promptness in bringing in a verdict for plaintiff after receiving the instructions, indicated that the jury was influenced by the instructions to the detriment of defendants, but as the instructions were admittedly correct and were merely a repetition of instructions already given, and we must presume that the foreman read the instructions to the jury exactly as given by the court and that the jury performed their duty properly, there is, in our opinion, no sound legal basis for such argument.

We, therefore, dismiss exceptions 5, 6, 7 and 8.

At the trial plaintiff moved at the end of his case to limit the evidence of defendants to issues raised by the answer only and not permit defendants to introduce evidence to sustain the counterclaim for the reason that the counterclaim is not sufficient under the rules of procedure to sustain their claim and because defend-

ants failed to introduce the counterclaim in accordance with the rules of procedure.

The court granted this motion over the objection of defendants' counsel. We think this was error.

What plaintiff asked in effect was to have defendants' counterclaim stricken off, declared null and void, without giving them an opportunity to amend. As we read the Pa. R. C. P. insofar as they apply to the situation here, we can find no authority for such action.

As we see it, when defendant failed to properly endorse his counterclaim with a notice to plead, plaintiff had several courses open to him, namely: He could file preliminary objections to the pleading; he could ignore the omission to endorse and file and serve his answer to the counterclaim, or, he could ignore the omission to endorse and wait for defendants to make the next move. No move on the part of defendant is required or necessary. If he proceeds with the case he waives all formal defects in the pleading.

Here plaintiff elected to ignore the omission of the endorsement to plead, seemingly under the impression that if he did so defendants could not introduce evidence in support of their counterclaim.

Having done this, plaintiff, without waiting for defendants to act, then advanced the proceedings by placing the case on the trial list, thus waiving any formal defects in the pleading. The situation then was that the counterclaim had the same force and effect as if it had been endorsed to plead and plaintiff had the benefit of having all the allegations therein held as sufficiently denied, without having had to file a reply, and the case could proceed as if the counterclaim had been properly endorsed and a sufficient reply thereto had been filed.

No such harsh penalty as having a pleading stricken off, for a mere formal defect, without an opportunity to amend, is imposed under the rules.

In Goodrich-Amram Civil Practice under rule 1017 (*b*), it is stated that the language of section 21 of the Practice Act of 1915 so closely parallels the language of rule 1017 (*b*) 2 that the decisions under the Practice Act of 1915 will be helpful in deciding similar questions when raised under these rules.

Section 21 of the Practice Act of May 14, 1915, P. L. 483, as amended by the Act of 1923, P. L. 325, sec. 1, reads:

"The court, upon motion, may strike from the record a pleading which does not conform to the provisions of this act, and may allow an amendment or a new pleading to be filed upon such terms as it may direct: Provided, That such motion to strike from the record any such pleading shall be filed and a copy thereof served upon the party filing such pleading or his attorney within fifteen days after a copy of such pleading shall have been served upon the opposite party or his attorney."

Rule 1017 (*b*) 2 of the Pa. R. C. P. reads:

"(b) Preliminary objections are available to any party and are limited to:

"1. [Not applicable to this case.]

"2. A motion to strike off the pleading because of lack of conformity to law or rule of court or because of scandalous or impertinent matter."

This rule is subject to the provision of rule 1026 that such motion to strike from the record any such pleading shall be filed within 20 days from service of the preceding pleading. The only difference between these rules seems to be that in one the pleading is called a motion to strike off and in the other a preliminary objection.

Plaintiff cites in his brief rules 1017, 1025, 1026, 1029 (*d*), 1037 (*b*), 1361, the comments in Goodrich-Amram on rules 1025-1, 1026-2 and on rule 1026 in Anderson's Pennsylvania Civil Practice.

Rule 1017 merely limits the pleadings which the litigants may file and its only relevancy here is to show that the counterclaim is a pleading within the meaning of the Pa. R. C. P. and, therefore, subject to those rules.

Rule 1025 provides, inter alia, that every pleading of a party represented by an attorney shall be endorsed with the name of the attorney together with the address within the county. This rule was complied with by defendants.

Section 1025-1 states that the notice to plead is not mandatory so that the failure of plaintiff to endorse it will not support an attack on the form of the complaint but will block the action and relieve defendant from any need to act.

If this applies to the complaint, it also applies to the answer and counterclaim as it is a pleading under the rules. Failure to endorse this pleading merely makes it unnecessary for plaintiff to take any action, that is, to file any responsive pleading to the counterclaim. Failure to endorse is no ground for attacking the pleading; the effect is to relieve plaintiff from the obligation to answer. Sanders v. Green Spring Dairy, 58 D. & C. 439 (1947) ; Goodrich-Amram, Actions at Law, rule 1025-1, note 3.

A complaint (and, therefore, an answer and counterclaim) will not be stricken off because the form of the notice to plead is wrong, fixing 15 days instead of 20. Germick v. Abate, 64 D. & C. 246, 40 Luz. L. R. 123 (1948).

Rule 1026 provides that every pleading subsequent to the complaint shall be filed within 20 days after service of the preceding pleading, but no responsive pleading need be filed unless the preceding pleading is endorsed with a notice to plead. In the discussion of rule 1026 in Anderson's Pennsylvania Civil Practice at page 424, notes 43 and 44, it is stated that:

*"If the preceding pleading is not so endorsed* (referring to the endorsement to plead) *there is no duty to file a responsive pleading and the averments of the preceding pleading are deemed automatically denied.* Phillips v. Evans, 164 Superior Ct. 410, 65 A 2d 423; Sanders v. Green Spring Dairy 58 D&C 439; Germick v. Abate 64 D&C 246. *No greater consequence attaches to the failure to endorse the pleading with a notice to plead.* The adverse party may still file a preliminary objection to the unendorsed pleading although he is not required to file a responsive pleading.

"The adverse party cannot move to strike the pleading because of an omission of the endorsement": Phillips v. Evans, supra; Germick v. Abate, supra; Sanders v. Green Spring Dairy, supra. (Italics supplied.)

Rule 1029 (*d*) provides that averments in a pleading to which no responsive pleading is required shall be deemed to be denied.

Rule 1037 (*b*) provides for the entry of judgment against defendant for failure to file within the required time an answer to a complaint, properly endorsed with the notice to plead, or, for any relief admitted to be due by the defendant's pleadings.

Rule 1361 sets forth the form of the notice to plead and that it shall be directed to the adverse party.

Nowhere in any of the provisions cited by plaintiff is it provided that failure to endorse a notice to plead on a pleading will vitiate or void the pleading and by analogy to section 21 of the Practice Act of 1915 such penalty was not intended. If it was the purpose of the Pa. R. C. P. to void a pleading for failure to endorse a notice to plead thereon what would be the reason for stating in a later rule (rule 1029 (*d*)) that an averment in the pleading to which no responsive pleading is required, i.e., an unendorsed pleading, shall be deemed to be denied? Of what avail would it be to deny the averments in a pleading which is null and

void. Plaintiff's argument here leads to an absurd result which is contrary to the Statutory Construction Act. If the framers of the Pa. R. C. P. had intended to declare a pleading not properly endorsed with a notice to plead a nullity, it could have so stated in a very few words. The fact that they did not and the provision of rule 1029 (d) conclusively show that they had no such intention.

Under the Practice Act of May 14, 1915, P. L. 483, if the statement of claim did not conform to the provisions of that act the proper procedure was for defendant to move to strike it off: United Mercantile Agencies v. Slotsky, 107 Pa. Superior Ct. 467, 472; King v. Brillhart, 272 Pa. 301, 114 Atl. 515; Rhodes v. Terheyden, 272 Pa. 397; Duggan v. Duggan, 291 Pa. 556, 140 Atl. 342. Winters v. Pa. Railroad Co., 304 Pa. 243; Greene Co. v. Center Twp., 305 Pa. 79; 86; 3 Standard Pa. Practice, 682 et seq., §5 et seq., note 20, in cases cited. The court then was under the duty of allowing defendants to amend if the defect could be cured by amendment.

As above stated the language of section 21 of the Practice Act of 1915 so closely parallels the language of rule 1017 (b) 2 that the decision under the Practice Act of 1915 will be helpful in deciding similar questions when raised under these rules, therefore, the cases last above cited are authority for the proposition that the proper procedure is not to vitiate and declare null and void a pleading which does not bear an endorsement to plead but if a preliminary objection is filed, to give the party at fault an opportunity to amend. These cases hold that it is not a matter of discretion but the positive duty of the court below to give the party at fault an opportunity to amend his pleading.

We do not find anything in Pa. R. C. P., or in the decisions, which sustain plaintiff's contention. We are

of the opinion that the court erred in granting plaintiff's motion to restrict defendants' evidence to the issues raised in his answer and not permit him to introduce evidence in support of his counterclaim. The court, therefore, makes the following

*Order*

Now, August 21, 1953, defendants' motion for a new trial is granted, the verdict in favor of plaintiff is set aside and the case is ordered to be placed on the issue docket and trial list.