# Commonwealth v. Kester, Appellant.

*Criminal law—Statutory rape—Reputation—Good character—Evidence.*

1. On the trial of a prosecution for statutory rape and bastardy evidence of specific acts tending to show the bad character of the prosecutrix are inadmissible. The evidence must be confined to the general reputation. The words "not of good repute" in the proviso of sec. 1 of the Act of May 19, 1887, P. L. 128, mean the reputation of the person for chastity in the community in which she lives; that is, what she is reputed to be, not what she actually is.

*Evidence—Good character—Substantive evidence.*

2. The evidence of good character is substantive and must be treated as such. It is not a mere makeweight to be thrown in to determine the balance in a doubtful case, but it may of itself by the creation of a reasonable doubt produce an acquittal.

Argued Oct. 6, 1914. Appeal, No. 173, Oct. T., 1914, by defendant, from judgment of O. & T. Lehigh Co., April T., 1914, No. 51, on verdict of guilty in case of Commonwealth v. Leeport Kester. Before RICE, P. J., HEAD, HENDERSON and KEPHART, JJ. Reversed.

Indictment for statutory rape and bastardy. Before GROMAN, P. J.

At the trial the prisoner set up as a defense that the prosecutrix was not of good repute, and offered several witnesses to prove specific acts of misconduct. The court excluded these offers and confined the proof to the general reputation of the prosecutrix. [2–6]

The evidence showed that the prosecutrix at the time of the offense was about thirteen years old, and that the defendant was over sixteen years of age.

The court charged in part as follows:

[Was this girl a woman of bad reputation at the time that this crime was committed? Was this child twelve or thirteen years old, or fourteen, did she have a reputation? and by reputation, gentlemen of the jury, you will have to be guided largely by the testimony of witnesses and the testimony of the witnesses produced on the part of the commonwealth; you are entitled to take their manner on the stand, you have seen the boys that were called, young men; some of them were called as to the bad reputation of the prosecutrix, Dorothy Carl, this child, and you have seen their demeanor on the stand. Was their demeanor such, gentlemen of the jury, as to lead you to believe that this child was a child of bad reputation or good reputation? When they testified to the reputation of this girl, were they in a situation, gentlemen of the jury, to know what they were talking about, or was it simply the idle talk and rumors of loafers standing along Hamilton street, discussing women and children as they pass along; or were they the filthy ideas of boys of sixteen or seventeen years whose

immature minds were filled with obscenity? Will you believe these young men when they take the stand and testify that the reputation of this girl was bad? Was it such a discussion among themselves that young men would have or do have, and would you believe them when they say so?] [7]

[Suppose you have reached the point in your consideration that. the prosecutrix is a woman of good repute,. and then you will notice, gentlemen of the jury, that the defendant here has entered another defense and has no reference in this section in the act, and that defense is this: the defendant takes the witness stand and denies that he had any connection whatever with this prosecutrix. In other words, the defense is, the girl is of bad repute, that she consented and such being the case, that he cannot be convicted of statutory rape, that in a few simple words is one of the defenses. One of the other defenses is, that he had no connection with the prosecutrix as she alleges. Now let us look at that branch of this case for a few moments; then we are in this situation: we have a prosecutrix who positively swears that at such a time and at such a place, you will remember, the court is .not going into details, the defendant here had connection with her. The defendant denies that fact as alleged by the prosecutrix, he says: "I had no connection with this girl." Then you are in this situation in so far as this case is concerned: are you willing to accept the statement made by the defendant, or are you willing to accept the statement made by the prosecutrix? In other words, gentlemen of the jury, you will have reached a point in this case as to whom you are willing to believe; will you accept the statement of the prosecutrix or will you accept the statement of the defendant? Well, this connection took place at a certain time, under certain circumstances which have been detailed to you by the witnesses in this case and the facts enlarged upon by counsel on both sides.] [9]

[If you have such a doubt in your minds, gentlemen

of the jury, you are not required to convict this defendant of statutory rape, he is to have the benefit of that doubt; and on the other hand if you reach a point where you have a doubt and where the scales of justice are so evenly balanced that you are in serious doubt as to which way the scales should fall, then when you reach that point, and the court tells you this so that there may be no mistake, when you reach that. point, there is another element in this defense which becomes very important, and that is the question of good character. Good character is always in itself an element in every case where a defendant comes into a criminal court and establishes good character as was done by this defendant. Good character and good reputation, where a defendant comes into court and establishes good character for chastity, that must weigh in his favor, and in the consideration of this case, gentlemen of the jury, you will take that in consideration and you must take that in consideration in any event in this case because the defendant is entitled to his previous good character and it must weigh as an element in the case for your consideration, and you must consider it. Now then, suppose you have a reasonable doubt, which is such a doubt that the scales of justice are balanced evenly and you throw the element of good character on the scales of justice, then that must weigh in favor of this defendant because it is an element in the case; you have to consider it and it must militate favorably to the defendant.] [10]

Verdict of guilty, upon which judgment of sentence was passed. The sentence was as follows:

"Now, June 15, 1914, the court sentenced the defendant, Leeport Kester, to pay a fine of Fifty ($50) Dollars, pay the costs of prosecution, pay Twenty-five ($25) Dollars lying-in expenses, pay the sum of One ($1) Dollar per week for the support of child for a period of seven (7) years, should the child so long live, and give bail in the sum of Two Thousand ($2,000) Dollars for

the defendant's appearance at the next term of the
Superior Court, which bail includes the usual bond of
Five Hundred ($500) Dollars to the Directors of the
Poor."

*Errors assigned* were (2–6) rulings on evidence; (7, 9,
10) above instructions, quoting them.

*James L. Schaadt,* with him *Charles W. Webb* and
*Charles W. Kaeppel,* for appellant.

*Lawrence H. Rupp,* district attorney, with him *John
L. Schwartz* and *Robert L. Schiffert,* for appellee.

OPINION BY RICE, P. J., December 7, 1914:
The first six assignments of error raise the question
as to the admissibility of evidence of specific acts tend-
ing to show the bad character of the prosecutrix. The
determination of that question depends on the construc-
tion of the words "not of good repute" in the proviso
of sec. 1 of the Act of May 19, 1887, P. L. 128. This
subject received full and deliberate consideration in
Com. v. Howe, 35 Pa. Superior Ct. 554, and we need not
go over the ground again. In the later case of Com. v.
Emery, 51 Pa. Superior Ct. 55, the true interpretation
of the above-quoted words was thus concisely stated
by our Brother HENDERSON: "The meaning of the word
'repute' in the statute is not doubtful. It means the
reputation of the person for chastity in the community
in which she lives: that is, what she is reputed to be;
not what she actually is, and the burden put on the
defendant was to show that the prosecuting witness bore
a bad reputation." It logically follows that the court
committed no error in confining the testimony upon this
branch of the case to the general reputation of the pros-
ecutrix and excluding the offers embraced in these
assignments.

We are constrained to say that the instructions (tenth

assignment) relative to the bearing and effect of the testimony adduced as to the defendant's good character were misleading. While the learned judge told the jury that the good character of a defendant if proved is an element which must be considered by the jury in any event and which must weigh in the defendant's favor and which he must be given the benefit of, yet the context tended to detract from the full force of these general remarks and to lead the jury to suppose that the time when this kind of evidence would become important was when they reached the point where they were in doubt. It is settled beyond controversy in Pennsylvania that evidence of good character is substantive and must be treated as such; that it is not a mere makeweight to be thrown in to determine the balance in a doubtful case, but that it may of itself, by the creation of a reasonable doubt, produce an acquittal: Heine v. Com., 91 Pa. 145; Hanney v. Com., 116 Pa. 322; Com. v. Cleary, 135 Pa. 64; Com. v. Sayars, 21 Pa. Superior Ct. 75; Com. v. Howe, 35 Pa. Superior Ct. 554, and Com. v. Howe, 38 Pa. Superior Ct. 208. Viewing the instructions embraced in this assignment in the light of the principle settled by these and other cases we are compelled to sustain this assignment.

The other assignments of error do not require particular discussion. But as the case must go back for a new trial we remark that there are expressions in the instructions quoted in the seventh and ninth assignments which may have had a tendency to mislead. We refer particularly to the concluding sentence of the instructions quoted in the ninth assignment and to that portion of the instructions quoted in the seventh assignment in which the suggestion seems to be made that the reputation of the prosecutrix concerning which the defendant's witnesses testified might be "simply the idle talk and rumors of loafers standing along Hamilton street discussing women and children as they pass

along." We do not say that these expressions evidently made inadvertently would of themselves be sufficient ground for reversing the judgment and ordering a new trial. Nevertheless they are the proper , subjects of criticism and doubtless will be avoided on the next trial.

The judgment is reversed and a venire facias de novo is awarded.