Commonwealth *v*. Faenza Matteo, Appellant.

116

Argued September 29, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Challen W. Waychoff*, and with him *Walter C. Montgomery*, for appellant.

*Harold Hanmer*, and with him *O. R. Hughes*, for appellee.

Opinion by Gawthrop, J., November 20, 1930:

Defendant stands convicted on an indictment drawn under Section 93 of the Act of March 31, 1860, P. L. 405, which makes it a misdemeanor for any person to commit an assault and battery upon a female with intent, forcibly and against her will, to have unlawful carnal knowledge of such female. On this appeal by him it is urged in his behalf (1) that his point requesting a verdict of not guilty should have been affirmed,

because the evidence is insufficient to support the ver-. dict; (2) that the charge to the jury was inadequate and prejudicial to his rights; and (3) that the instruc- tion as to the weight and effect of evidence of good character was erroneous.

1. The evidence for the Commonwealth consisted of the testimony of the prosecutrix and her husband, who lived together in the Borough of Rices Landing, Greene County, Pennsylvania. Defendant kept a small store in the borough and lived with his wife and chil- dren in a suite of rooms over the store. The prosecu- trix testified that on June 1, 1929, she arose about five o'clock in the morning to wash clothes; that she went to defendant's store for soap; that when she arrived there, after a ten minute walk, it was between half- past six and seven o'clock in the morning and the door of the store was locked; that as she was about to rap on the door she saw defendant coming through the store; that he unbolted the door and let her in and then shut the door. She continued: "As he shut the door he grabbed me by the neck and patted me on the neck. I didn't think so much about that, and he asked me what I wanted. I told him three cakes of Octagon soap and a dime's worth of candy. He got the soap and laid it on the counter like he should and I told him I wanted a dime's worth of candy. I laid a quarter and a dime, thirty-five cents, down on the counter when he laid the soap down. So he got me the candy, and he said, 'Where do you live?' I said on New Hill. And he said, 'What's your name?' I said 'Huffman,' and I says, 'You know my man, Charley Huffman, he buys here.' He said, 'I don't know.' At the same time he did know him; he wanted him to deal there before, and he said, 'Are you married?' I said, 'Yes.' That's all the words were spoken. So he laid the candy down on the counter and took the money. I took the soap and candy in my arms and waited for the change. Instead

of handing it over the counter he walked around the end of the counter with the penny in his hand ...... He stood at the end of the counter. He didn't bring the penny over and I walked up to get it. As I reached my hand in his he held my hand with the penny—he had my hand and he wouldn't let go—I seen he wasn't going to let go. He didn't and as I went to turn around he threw both his arms around me and hugged me real tight, and I couldn't get nobody to hit him so I started to wrestle around and tried to get away from him, and he seen I was going to try to get away so he let me go, and as I got loose I ran to the door ...... I ran from there clear home.'' On cross-examination she testified: ''As I turned my back he threw both arms around me and hugged me real tight, and said 'Come on.' ...... He wrestled around with me and tried to pull me behind the counter ...... he had me half-way between it.'' She testified further that when she got home she told her husband what happened; that they then started for defendant's store and met him on the way; that her husband said to defendant, ''What were you doing to my woman down there?'' and that defendant said, ''She come to my store six o'clock, that's all.'' The husband testified that he asked defendant, ''What's the idea of hugging my wife?'' and that defendant said, ''That's all right, she has no right coming into my store six o'clock in the morning.'' Defendant admitted that the prosecutrix came into his store at the time and in the manner described by her. He denied that he touched her. His wife testified that she was in a room adjoining the store room when the alleged offense was committed; that the door between the two rooms was open; and that her husband did not touch the prosecutrix. Upon this testimony it would have been error for the trial judge to have directed a verdict of not guilty. If the jury believed the prosecutrix defendant was at least guilty

of simple assault and battery and the court might well have instructed them that they could convict on that offense, although the indictment did not charge it. On an indictment containing one count charging an offense a defendant may be convicted of a constituent offense involved within it: Com. v. Anagustov, 82 Pa. Superior Ct. 156. In that case we sustained a conviction of aggravated assault and battery under an indictment containing one count charging that the defendants did feloniously assault and did feloniously and violently rob. But we are convinced that it was not error for the court to submit the question whether an assault and battery was committed with intent to have carnal knowledge of the prosecutrix, forcibly and against her will. Whether such an intent was in the mind of defendant was for the jury.

2. We find no merit in the contention that the general effect of the charge was unfavorable and prejudicial to the rights of defendant. The principal complaint in this regard is that the trial judge failed to instruct the jury that if the intent of defendant, which accompanied the battery, amounted to no more than an intent to gain the consent of the prosecutrix to sexual intercourse, there could be no conviction of assault with intent to commit rape. This criticism is not well founded in the light of the instruction that defendant could not be convicted unless there was present in the mind of the person committing the assault an intent "to have carnal knowledge of the prosecuting witness in this case, forcibly and against her will."

3. The remaining complaint, that made of the portion of the charge relating to character evidence, is more serious and prevents our affirming the judgment. The part of the charge referred to reads as follows: "Now, evidence of good character in a criminal case is substantive and positive evidence and in a doubtful case it may of itself create a reasonable doubt and

produce an acquittal in a case when taken in connection with other evidence in the case. It has some weight in passing upon the credibility of the witness, his character.'' This instruction was manifestly wrong because it limited the efficacy of evidence of good character to create a reasonable doubt to a doubtful case when it is well settled that evidence of good character is not a mere make weight to be thrown in to determine the balance in a doubtful case, but that it may of itself, by the creation of a reasonable doubt, produce an acquittal. See Com. v. Mack, 92 Pa. Superior Ct. 165; Com. v. Mandela, 48 Pa. Superior Ct. 56; Com. v. Cate, 220 Pa. 138; Com. v. Kester, 58 Pa. Superior Ct. 509. The court below, in stating that evidence of good character may ''in a doubtful case create a reasonable doubt and produce an acquittal,'' fell into substantially the same error as was committed in Com. v. Sayars, 21 Pa. Superior Ct. 75, where the language was as follows: ''Good character should be considered in a doubtful case, or in a case where, after summing up all the testimony carefully, the jury are in an equilibrium, or almost balanced.'' In reversing this court said: ''To say that proof of character is only available under such circumstances, is to say that it is of no substantial account whatever ...... Character is of importance in this: it may, of itself, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury, and so produce an acquittal.'' Its efficiency to raise a reasonable doubt is not limited to cases which are doubtful, independent of good character. This assignment of error is sustained. All of the others are overruled.

The judgment is reversed and a new trial is awarded.