J-S26021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUANE JONES, | : | |
| | : | |
| Appellant | : | No. 2530 EDA 2022 |

Appeal from the PCRA Order Entered September 9, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009523-2015

BEFORE: STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED OCTOBER 26, 2023**

Duane Jones appeals from the order dismissing his first, timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. He argues that his trial counsel was ineffective for failing to challenge the prosecutor's strike of a prospective juror under ***Batson v. Kentucky***, 476 U.S. 79 (1986). We affirm.

Jones was charged with rape and other crimes in August of 2015. His case proceeded to jury selection on December 4 and 5, 2017. Jury selection included individual *voir dire* of all prospective jurors who had not been disqualified based on their responses to the jury questionnaire.[1] At individual *voir dire*, the Commonwealth exercised four peremptory challenges, striking

---

[1] Prospective jurors who had given presumptively disqualifying answers, such as not being able to follow the judge's instructions, were assigned to a "B group" that was not brought in for individual *voir dire*. No one objected to this procedure.

prospective jurors 5, 24, and 30 on the first day and prospective juror 6 on the second day ("PJ5," "PJ24," "PJ30," and "PJ6," respectively).

Trial followed jury selection. The jury returned a guilty verdict on December 8, 2017. On April 27, 2018, Jones was sentenced to an aggregate term of 6 to 12 years of confinement followed by 4 years of probation.

Jones filed post-sentence motions, which the trial court denied. Jones timely appealed, this Court affirmed, and our Supreme Court denied discretionary review. **Commonwealth v. Jones**, 226 A.3d 664 (table), No. 2803 EDA 2018 (Pa. Super. Jan. 31, 2020) (non-precedential decision), *allocatur denied*, 662 Pa. 29, No. 82 EAL 2020 (Pa. Sept. 1, 2020).

On July 26, 2021, Jones filed a timely, counseled PCRA petition, his first. In his petition, Jones alleged, *inter alia*, that his trial counsel was ineffective for "fail[ing] to object to the exclusion of juror(s) by the Commonwealth, solely based on race." PCRA Petition, 7/26/21, at 6, 8–9 (capitalization omitted). He averred: "Here, [Jones] is African-American and the prosecutor struck four African-American prospective jurors," "Two African-American jurors were accepted by the Commonwealth," and "The Commonwealth struck zero white jurors." **Id.** at 8–9. Jones attached documentation from jury selection, including the judge's daily list of jurors, the jurors' questionnaires, and his trial counsel's notes from jury selection.

The Commonwealth responded that Jones' claims were meritless. It attached handwritten notes from the prosecutor's file from jury selection.

- 2 -

The PCRA court[2] held an evidentiary hearing on Jones' petition on June 2, 2022. The trial prosecutor testified. Because the prosecutor had only a general recollection of a trial from five years earlier, PCRA counsel refreshed the prosecutor's recollection with her own handwritten notes. The notes included an abbreviation for each prospective juror's race, sex, and age range. The prosecutor gave the following reasons for her peremptory strikes:

- PJ5 had a better rapport with defense counsel and acted annoyed at the prosecutor's questions.

- PJ24 had a strange affect with the judge and made a joke. The prosecutor believed she would sympathize with Jones.

- PJ30 did not fill out the jury questionnaire. The prosecutor believed she would not take the process seriously.

- PJ6 had answered no to every question on the jury questionnaire. The prosecutor did not believe that an older lifelong resident of Philadelphia would not have experienced crime. The prosecutor testified that PJ6 "was reluctant to provide any information about anything" she asked.

N.T., 6/2/22, at 13–15, 18–19, 21, 24–27.

Jones' trial counsel also testified at the evidentiary hearing. He stated that, now reviewing his notes, "it appears that Black jurors were being struck."

---

[2] The Honorable Roger Gordon, who presided over Jones' trial, was no longer seated at the time of Jones' PCRA petition. The PCRA case was assigned to the Honorable Giovanni O. Campbell.

*Id.* at 41. He explained that the reason he did not object was because he had not realized it while it was happening. *Id.* at 44.

The PCRA court denied Jones' petition by order on September 12, 2022. It entered findings of fact and conclusions of law on September 19, 2022 ("PCRA Court Opinion").

Jones timely appealed. The PCRA court did not order Jones to file a concise statement of matters complained of on appeal. In compliance with Pennsylvania Rule of Appellate Procedure 1925(a), the PCRA court prepared a letter referring to its previous Opinion.

Jones presents one issue for review: "Whether Appellant, Duane Jones, is entitled to a new trial under the [PCRA] due to the deficient and prejudicial performance by trial counsel, specifically whether trial counsel was ineffective in failing to object under *Batson v. Kentucky* in light of the Commonwealth's racially discriminatory peremptory strikes." Jones' Brief at 4.

With respect to the underlying *Batson* claim, Jones argues that the trial prosecutor engaged in actual, purposeful discrimination based on race. He provides four factors in support of this showing. First, the prosecutor "engaged in a pattern of striking Black or Brown[3] potential jurors." *Id.* at 18–19. Second, the prosecutor noted the race of each prospective juror who

---

[3] PJ30 from was listed as "B/F" in defense counsel's notes and "H/F/Y" in the prosecutor's. The PCRA court noted that she had "a surname usually identified as Hispanic" but declined to "read too much into" her name as proof of race. PCRA Court Opinion at 7 n.2 (noting the court's own identity as a "relatively dark skinned Latino, with a non-Hispanic sounding name").

- 4 -

was brought in for individual *voir dire*. **Id.** at 19–20. Third, most of the prosecutor's explanations for exercising strikes were unsupported by the record and implausible. **Id.** at 20–22. The *voir dire* transcripts did not show PJ5 having a rapport with defense counsel or PJ24 acting strangely or joking. Fourth, the prosecutor's explanation for striking PJ6 is suspicious because prospective juror 34 from the first day (listed as "W/F" in defense counsel's notes and "W/F/Y" in the prosecutor's) also answered "no" to every question on the jury questionnaire yet was accepted as juror 10 for trial. **Id.** at 22–26. Therefore, Jones argues that the totality of the circumstances show that the prosecutor struck at least one prospective juror—PJ6—with discriminatory intent. **Id.** at 26–27.

For the claim of ineffective assistance of counsel, Jones argues that the underlying **Batson** claim is meritorious and that that his trial counsel had no strategic basis for failing to object. **Id.** at 27–28. As to prejudice, Jones contends that because a **Batson** violation is a "structural error," it inevitably undermines confidence in the outcome of trial. **Id.** at 28–29. Therefore, he reasons that he can meet his burden by showing that the prosecutor struck at least one potential juror with discriminatory intent. **Id.** at 29–30. Jones thus contends that he has proven that his trial counsel was ineffective for failing to raise a **Batson** challenge, and the PCRA court erred in denying relief.

The Commonwealth responds that the record supports the race-neutral reasons the trial prosecutor gave for its strikes. Commonwealth's Brief at 12–14. Specifically, the Commonwealth emphasizes that the prosecutor's strike

of PJ6 was due to his "no" answers on the jury questionnaire **and** his old age— the prosecutor would not have had the same concerns with the younger prospective juror who also answered that she had not been a crime victim. *Id.* at 14–15. Because the prosecutor's explanations are plausible, the Commonwealth argues that the PCRA court properly found that Jones did not prove actual, purposeful discrimination. *Id.* at 15.

Jones replies that he sufficiently established the racial statistics needed for a *prima facie* showing of discrimination. Jones' Reply Brief at 3–5. He reiterates that because the trial prosecutor admitted to having no independent memory of striking PJ5, her subsequent explanation was speculative because it was not supported by her notes or the *voir dire* transcript. *Id.* at 5–8. As to PJ6, Jones emphasizes that the prosecutor did not question this prospective juror about his experience with crime or past victimization; furthermore, PJ6 answered all of the questions asked of him. *Id.* at 8–9. Jones adds that the record contradicts the Commonwealth's characterization of PJ6 as elderly because he had one two-year-old child. *Id.* at 9. Jones thus concludes that the prosecutor's race-neutral reason for striking PJ6 was pretextual and that he has proven actual, purposeful discrimination based on race. *Id.* at 10.

This Court's standard of review for an order denying PCRA relief "is limited to whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error." **Commonwealth v. Carrera**, 289 A.3d 1127, 1131 n.6 (Pa. Super. 2023) (citing **Commonwealth v. Lopez**, 249 A.3d 993, 998 (Pa. 2021)). We grant "great deference to the

factual findings of the PCRA court if the record contains any support for those findings." **Commonwealth v. Washington**, 269 A.3d 1255, 1262 (Pa. Super. 2022) (citing **Commonwealth v. Howard**, 249 A.3d 1229 (Pa. Super. 2021)). This case implicates two legal claims: ineffective assistance of counsel, **see Strickland v. Washington**, 466 U.S. 668 (1984), and the use of peremptory strikes of prospective jurors based on race, **see Batson**, 476 U.S. at 82.

Pennsylvania law requires a PCRA petitioner who claims that his attorney was ineffective to establish each part of a three-part test:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. **Commonwealth v. Pierce**, 527 A.2d 973, 975–76 (Pa. 1987); **see also Commonwealth v. Solano**, 129 A.3d 1156, 1162 (Pa. 2015). If a claim fails under any required element of the **Strickland**/**Pierce** test, the court may dismiss the claim on that basis. **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). Counsel is presumed to be effective, and the burden of demonstrating ineffectiveness rests on the [PCRA petitioner]. **Id.**

**Commonwealth v. Johnson**, 236 A.3d 63, 68 (Pa. Super. 2020) (*en banc*) (footnote omitted).

Regarding peremptory strikes, the Supreme Court held that under the Equal Protection Clause of the United States Constitution, a prosecutor may not exercise a peremptory strike against a prospective juror "on account of race." **Batson**, 476 U.S. at 86 (citing **Strauder v. West Virginia**, 100 U.S.

303, 305 (1880)). It provided a three-step burden-shifting framework to be applied when a defendant objects during jury selection, which Pennsylvania has adopted and phrased as follows:

> [f]irst, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

*Commonwealth v. Blakeney*, 108 A.3d 739, 768 (Pa. 2014) (quoting

*Commonwealth v. Roney*, 79 A.3d 595, 619 (Pa. 2013)).

The first step, a *prima facie* showing, requires a defendant to show "that he is a member of a cognizable racial group,[4] that the prosecutor exercised a peremptory challenge or challenges to remove from the venire members of the defendant's race; and that other relevant circumstances combine to raise an inference that the prosecutor removed the juror(s) for racial reasons."

*Commonwealth v. Edwards*, 177 A.3d 964, 972 (Pa. Super. 2018) (quoting

*Commonwealth v. Cook*, 952 A.2d 594, 602 (Pa. 2008)). To enable review of the *prima facie* showing, Pennsylvania courts require an appellant to

> make a record specifically identifying (1) the race or gender of all venirepersons in the jury pools, (2) the race or gender of all venirepersons remaining after challenges for cause, (3) the race

---

[4] "A defendant of any race may raise a *Batson* claim, and a defendant may raise a *Batson* claim even if the defendant and the excluded juror are of different races." *Flowers v. Mississippi*, 588 U.S. __, 139 S. Ct. 2228, 2243 (2019) (citing *Hernandez v. Texas*, 347 U.S. 475, 477–478 (1954), and *Powers v. Ohio*, 499 U.S. 400, 406 (1991)).

or gender of those removed by the prosecutor, and (4) the race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken by the defense.

*Commonwealth v. Murray*, 248 A.3d 557, 568 (Pa. Super. 2021) (citing *Commonwealth v. Hill*, 727 A.2d 578, 582 (Pa. Super. 1999)).

The second step, the prosecutor's explanation for the peremptory strike, "does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Edwards*, 177 A.3d at 973 (quoting *Commonwealth v. Harris*, 817 A.2d 1033, 1043 (Pa. 2002)).

The third step is the trial court's ultimate determination, in which it "assesses the totality of the circumstances surrounding juror selection and determines whether the defendant has made out a case of purposeful discrimination." *Murray*, 248 A.3d at 568. "[A] trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous." *Commonwealth v. Roney*, 79 A.3d 595, 619 (Pa. 2013) (quoting *Commonwealth v. Williams*, 980 A.2d 510, 531 (Pa. 2009)).

When a defendant does not preserve a *Batson* challenge before the trial court, he may only obtain relief "through a derivative claim of ineffective assistance of counsel." *Commonwealth v. Uderra*, 862 A.2d 74, 86 (Pa. 2004) (citing *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999)).

In such cases, a post-conviction petitioner "is not entitled the benefit of *Batson*'s burden-shifting formula, but instead, bears the burden in the first instance and throughout of establishing actual, purposeful discrimination." *Id.* (citing *McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996), and *Ford v. Georgia*, 498 U.S. 411, 422 (1991)). Because post-conviction proceedings occur long after the jury was selected, a petitioner "is not entitled to the benefit of the burden of persuasion as to whether there is a race-neutral explanation for the prosecutor's use of peremptory challenges." *Commonwealth v. Simpson*, 66 A.3d 253, 261–62 (Pa. 2013) (citing *Uderra*, 862 A.2d at 86).

Additionally, in a *Batson*-based claim of ineffectiveness, the petitioner must "meet[] the 'performance and prejudice' standard for demonstrating counsel's ineffectiveness." *Id.* at 262 (quoting *Uderra*, 862 A.2d at 87, and *Commonwealth v. Jones*, 951 A.2d 294, 298–301 (Pa. 2008)). That is, merely establishing a *Batson* violation does not relieve a petitioner from proving the third prong of the test for ineffective assistance of counsel.[5]

---

[5] It is an "open question" whether all violations identified as "structural errors" require an independent showing of prejudice. *See Commonwealth v. Koehler*, 229 A.3d 915, 955 n.8 (Pa. 2020) (Dougherty, J., concurring and dissenting), *cf. Weaver v. Massachusetts*, 582 U.S. 286 (2017) (requiring prejudice where the error was a closed courtroom during jury selection).

Notably, the States and federal appellate courts are divided whether a *Batson*-based claim of ineffective assistance of counsel requires a post-conviction petitioner to make a separate showing of prejudice. *See generally*
*(Footnote Continued Next Page)*

Here, the PCRA court addressed Jones' **Batson** claim as follows:

> In light of the exercise and withholding of peremptory challenges relating to Black persons and persons of color, [Jones] has failed to demonstrate any statistical significance to [the prosecutor's] exercised peremptory challenges in a racially discriminatory manner. [The prosecutor] accepted Black jurors and other jurors of color. [Defense counsel] struck a Black person (Prospective Juror 40) and a person of color (Prospective Juror 35).
>
> The relevant circumstances do not combine to raise an inference that the prosecutor removed jurors for racial reasons. [The prosecutor's] explanations for her use of peremptory challenges established race neutral reasons[,] were not a pretext for [racial] discrimination either in isolation or in the context of the entire *voir dire* proceeding[, and] were not based on actual, purposeful discrimination.

PCRA Court Opinion at 10–11 (sentences reordered and formatting altered).

---

*Yazzie v. State*, 487 P.3d 555, 563 (Wyo. 2021) (cataloguing cases by the "narrow approach" and the "traditional prejudice rule").

However, Pennsylvania cases on **Batson**-based ineffectiveness claims have always required a showing of prejudice and have not adopted arguments to the contrary. "[The requirement that the petitioner prove actual, purposeful discrimination] comports with the heightened criteria for obtaining post-conviction relief, which include the requirement to demonstrate prejudice . . . ." *Uderra*, 862 A.2d at 86 (citing 42 Pa.C.S.A. § 9543); *see Commonwealth v. Hanible*, 30 A.3d 426, 477–79 (Pa. 2011) (noting the appellant's "structural error" argument; finding insufficient evidence of purposeful discrimination); *cf. Commonwealth v. Collins*, 957 A.2d 237, 259 (Pa. 2008) (finding waiver for failure to develop an argument as to performance and prejudice).

One exception may arise in a capital case. *Commonwealth v. Basemore*, 744 A.2d 717, 734 (Pa. 2000). "[W]hile we agree with the Commonwealth that the evidence of guilt in this case was overwhelming, we find it significant that the claim that a fair and impartial jury was not empaneled also calls into question the reliability of the sentencing determination." *Id.* Here, because Jones was not sentenced to death, the default prejudice requirement applies.

The record supports the PCRA court's factual finding that the prosecutor did not strike PJ6 or any other prospective juror for racial reasons. We note that *Edwards*, on which Jones relies, arose in the context of a preserved *Batson* challenge. *Edwards*, 177 A.3d at 971. There, the most important factor in this Court's reversal was the prosecutor's "wholly underpersuasive" explanation for striking a juror—inattentive posture. *Id.* at 975–76. By contrast, the prosecutor's given explanation for striking PJ6 in Jones' case bore directly on his perceived honesty and fairness as a juror. Because the prosecutor perceived PJ6 to be old (and therefore wrote down that he was old), she did not think that his response to the question about being the victim of a crime was accurate. N.T., 6/2/22, at 25. Because the prosecutor noted PJ6 being old, he is distinguishable from a younger "22-year-old who just moved to the city." *Id.* at 26–27.

We also reject Jones' contention that because the trial prosecutor testified that she did not "have an independent memory of" her strikes, anything not in her handwritten notes is unsupported by the record. *Id.* at 12. PCRA counsel used the prosecutor's notes to refresh her recollection. *Id.*; *see* Pa.R.E. 612(a). This does not limit the prosecutor's testimony to what she had written down during jury selection. "The recollection of the witness— not the memorandum used to refresh it—is the real evidence." *Lardieri v. Lamont*, 92 A.2d 229, 230 (Pa. Super. 1952) (quoting *Commonwealth v. Perri*, 97 Pa.Super. 78, 84 (1929)). The PCRA court, as fact finder, was in a good position to evaluate the prosecutor's testimony in light of her refreshed

recollection and to consider all of her statements. We therefore find that the PCRA court did not clearly err in accepting the prosecutor's race-neutral explanations for her strikes and concluding that Jones did not show actual, purposeful discrimination.

Further, even if Jones had proven that the prosecutor struck PJ6 based on his race, he has not shown that he suffered prejudice such that there is a reasonable probability that the result of his trial would have been different. Rather, Jones relies on a ***Batson*** violation being "structural error" as a substitute for his burden to prove that the jury selection prejudiced him. As addressed ***supra***, Pennsylvania courts have not adopted this reasoning.

As the PCRA court found:

> [Jones] and the complainant were both black. Race was not in any way an element or issue in [Jones'] trial. There is nothing about the nature of the crime or the race of those involved that in any way supports a conclusion of intentional racial discrimination in the prosecutor's exercise of peremptory challenges in jury selection.

PCRA Court Opinion at 10–11 (formatting altered). Therefore, Jones did not meet his burden to prove that he was prejudiced by his trial counsel's failure to raise a contemporaneous ***Batson*** challenge. Thus, he is unable to meet the third prong of the ineffectiveness test, and his PCRA claim fails. ***Simpson***, 66 A.3d at 262.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/26/2023